**Odis J. COLLINS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–98–00438–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

July 1, 1999.

Tony Aninao, Houston, for Appellant.

Keli Pool Roper, Assistant District Attorney, John B. Holmes, District Attorney of Harris County, Houston, for State.

Panel consists of Justices COHEN, O'CONNOR, and WILSON.

## OPINION

MURRY B. COHEN, Justice.

A jury convicted the appellant of aggravated sexual assault and assessed punishment at life imprisonment. We affirm.

### Jury Instruction at Punishment Stage

In point of error two, appellant asserts the trial judge erred by not instructing the jury at the punishment stage that it could not consider extraneous offenses unless they were proved beyond a reasonable doubt. In point of error three, appellant asserts the trial judge erred at the punishment stage by not defining reasonable doubt. Appellant did not request these instructions, and he did not object to their omission. We will consider these points together.

Extraneous offenses admitted at the guilt-innocence stage must be proved beyond a reasonable doubt, and the jury must be so instructed. *George v. State,* 890 S.W.2d 73, 76 (Tex.Crim.App.1994). The same is true at the punishment stage. Tex.Code Crim. P. Ann. art. 37.07, § 3(a) (Vernon Supp.1999); *Mitchell v. State,* 931 S.W.2d 950, 954 (Tex.Crim.App.1996) (plurality op.). Therefore, we hold the judge

erred by not giving a reasonable doubt instruction at the punishment stage regarding the extraneous offenses.

Several courts of appeals have held that, in addition to an instruction on reasonable doubt, the term "reasonable doubt" must be defined in the jury charge at the punishment stage. *Matz v. State*, 989 S.W.2d 419, 425 n. 3 (Tex.App.—Fort Worth 1999, pet. pending); *Splawn v. State*, 949 S.W.2d 867, 873–75 (Tex.App.—Dallas 1997, no pet.). Other courts have held that failure to define the term in the punishment charge is not error if, as here, reasonable doubt was properly defined at the guilt-innocence stage of trial. *Coleman v. State*, 979 S.W.2d 438, 443 (Tex.App.—Waco 1998, no pet.); *Levy v. State*, 860 S.W.2d 211, 213 (Tex.App.—Texarkana 1993, pet ref'd). The courts that have held the failure to define reasonable doubt at the punishment stage was error have applied the familiar rule in *Almanza v. State* to assess the harm from this particular error. *Matz*, 989 S.W.2d at 426; *Coleman*, 979 S.W.2d at 444; *Ewing v. State*, 971 S.W.2d 204, 211 (Tex.App.—Beaumont 1998, no pet.); *Cormier v. State*, 955 S.W.2d 161, 163 (Tex.App.—Austin 1997, no pet.); *Splawn*, 949 S.W.2d at 875; *Yates v. State*, 917 S.W.2d 915, 922 (Tex.App.—Corpus Christi 1996, pet. ref'd).

Some courts have held that this error is constitutional and requires "automatic reversal." *Martinez v. State*, 969 S.W.2d 139, 140–41 (Tex.App.—Fort Worth 1998, pet. granted) (automatic reversal); *Fields v. State*, 966 S.W.2d 736, 742 (Tex.App.—San Antonio 1998, pet. granted) (error is constitutional). For reasons stated below, we hold the error does not require automatic reversal, and furthermore, it is not constitutional error. Therefore, it should not be analyzed under Texas Rule of Appellate Procedure 44.2(a). Like our six sister courts above, we will apply the conventional standard under *Almanza* and hold that, to win a reversal without objection, appellant must show egregious harm. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g).

## I. Is Automatic Reversal Required?

The short answer is "no," as we held in *George v. State*, 841 S.W.2d 544, 549 (Tex. App.—Houston [1st Dist.] 1992), *aff'd*, 890 S.W.2d 73 (Tex.Crim.App.1994). In *George*, the error was the failure to give a reasonable doubt instruction on extraneous offenses at the guilt-innocence stage of trial. We applied *Almanza*, reversed, and the Court of Criminal Appeals not only affirmed our judgment, it soon held the same thing, unanimously applying *Almanza* as the standard of review for harm when this error occurs at the punishment stage. *Mitchell*, 931 S.W.2d at 954. Although there were four opinions in *Mitchell* and none got more than three votes, no judge objected to the remand, no judge questioned that *Almanza* applied, and no judge advocated automatic reversal. "We take this to be a rather clear indication our high court does not perceive *George* or *Mitchell* error to be error regarding a fundamental systemic requirement or error of constitutional dimensions." *Ewing*, 971 S.W.2d at 211.

In *Martinez*, 969 S.W.2d at 140–41, the Fort Worth court held that automatic reversal is required, under *Reyes v. State*, 938 S.W.2d 718, 721 (Tex.Crim.App.1996). Unlike the present case, *Reyes* did not deal with extraneous offenses, and it did not deal with the punishment stage of trial. *Reyes* held that automatic reversal was required for failure to define reasonable doubt concerning the primary offense at the guilt-innocence stage of trial. Therefore, *Reyes* does not control this case. Appellant apparently agrees. Of the 89 cases listed in his index of authorities, *Reyes* does not appear. Nor does appellant contend he should get an automatic reversal. He says the controlling authority is *Almanza v. State* and concedes that, because he did not object, he must show egregious harm.

The issue in *Martinez* was whether a definition of reasonable doubt must be given concerning an enhancement paragraph, not an extraneous offense. *Id.* at 139–40. The *Martinez* court held the lack of a definition required automatic reversal, even though the charge properly required the State to prove the enhancement allegation beyond a reasonable doubt. *Id.* We do not agree fully with either the majority or the dissent there.

*Martinez* is distinguishable because it involved an enhancement paragraph.[1] Unlike an extraneous offense, an enhancement paragraph is a discrete allegation within the indictment that requires a special verdict; thus, the trial of an enhancement paragraph has "all the hallmarks of a trial on guilt or innocence." *Id.* at 140 (quoting *Ex parte Augusta*, 639 S.W.2d 481, 484–85 (Tex.Crim.App.1982)). *Martinez* is, therefore, a stronger case for requiring automatic reversal than this one, which involves extraneous offenses. The *Martinez* majority held that this difference justified automatic reversal, distinguishing *Mitchell*, which we have discussed above. *Martinez*, 969 S.W.2d at 141.

The *Martinez* majority declined to follow *Mitchell* for the second reason that *Mitchell* did not mention either *Geesa v. State*, 820 S.W.2d 154, 162 (Tex.Crim.App. 1991), or *Reyes*, thus implying that *Mitchell* was simply wrong or at least not reconcilable with those cases. If an inconsistency exists, which we doubt,[2] we would follow *Mitchell* because it is closest to our facts, *i.e.*, here, as in *Mitchell*, the charge on punishment omitted both a reasonable doubt definition and instruction on extraneous offenses (not on the primary offense nor on an enhancement paragraph), but in *Mitchell*, that did not cause automatic reversal. 931 S.W.2d at 950, 954. Instead,

it required review under the *Almanza* standard. *Id. Mitchell* is recent, unambiguous, and, on this point, unanimous.

Nor do we agree with the *Martinez* dissent's reliance on *Posey v. State*, 966 S.W.2d 57 (Tex.Crim.App.1998), for the proposition that if a defendant does not object to a missing instruction on reasonable doubt, he waives the error. *See Martinez*, 969 S.W.2d at 142 (Cayce, C. J., dissenting). We agree with our sister courts of appeals that *Posey* does not control this case. *Accord Ewing*, 971 S.W.2d at 211 (distinguishing extraneous offenses from defensive issues like mistake of fact, the issue waived in *Posey*); *Coleman*, 979 S.W.2d at 442 ("Some courts interpret *Posey* ... to require an objection or request to avoid waiver on appeal. We interpret *Posey* to require action only when the charge wholly omits a defensive issue.").

*Posey* had nothing to do with extraneous offenses, or enhancements, or the punishment stage, or reasonable doubt instructions, or reasonable doubt definitions. *Posey* did not overrule *Almanza*. *Posey*, 966 S.W.2d at 61 n. 9. *Posey* reaffirmed *Almanza*, but it held that *Almanza* did not apply to omission of "defensive issues" at the guilt-innocence stage of trial. *Id.* at 60. *Posey* held that a defendant must request or else waive a mistake of fact instruction. *Posey* thus applies to defensive issues. The State's burden of proof regarding extraneous offenses at the punishment stage is not a defensive issue. It is a statutory burden imposed on the State. Tex.Code Crim. P. Ann. art. 37.07, § 3(a) (State's burden of proof at punishment stage). After *Reyes*, which requires automatic reversal without a trial court objection, without a harm analysis, and even without a complaint on appeal, it is clear that the reasonable doubt instruction

---

1. Moreover, the defendant in *Martinez* pled guilty. Thus, there was no guilt-innocence stage of trial, and the jury did not receive a proper reasonable doubt definition and instruction then. *Id.* at 140.

2. Both *Geesa* and *Reyes* involved error at the guilt-innocence stage of trial, not at the punishment stage, and both reversed because of defective instructions concerning the primary offense on trial, not extraneous offenses. This distinguishes them from, and reconciles them with, *Mitchell*.

is part of the State's burden of proof,[3] not appellant's. *See Reyes,* 938 S.W.2d at 720.

## II.   Is the Error "Constitutional"?

In *Fields v. State,* the judge gave a reasonable doubt instruction on extraneous offenses at the punishment stage, but he failed to define reasonable doubt.   966 S.W.2d 736, 741 (Tex.App.—San Antonio 1998, pet. granted).  The majority declined to reverse automatically, but it also declined to apply the *Almanza* standard.  Instead, it held the standard of review for harm from failing to define reasonable doubt regarding extraneous offenses at the punishment stage was Texas Rule of Appellate Procedure 44.2(a) because the error was constitutional error.  *Id.* at 742.  We disagree with that holding.  We know of no constitutional requirement to prove extraneous offenses at the punishment stage beyond a reasonable doubt.  *Accord Coleman,* 979 S.W.2d at 442; *Ewing,* 971 S.W.2d at 211.  There is only the statutory requirement.  None of the four opinions by the Court of Criminal Appeals in *Mitchell* said this was constitutional error.  None even considered the possibility.  Every one said the error was statutory, under article 37.07, section 3(a).  *Mitchell,* 931 S.W.2d at 951–53 (Overstreet J., two-judge plurality op.); *Id.* at 955 (Clinton, J., concurring); *Id.* at 955–56 (Meyers, J., concurring); *Id.* at 957 (McCormick, P. J., dissenting).  We agree.

Therefore, we hold:

1.   This is statutory, not constitutional, error;

2.   *Posey* does not allow a holding that this error was waived by lack of objection.  *Posey* does not apply to this case because the State's burden to prove that appellant committed extraneous offenses is not a "defensive issue;" and

3.   As the Court of Criminal Appeals held in *Mitchell,* the standard of review is egregious harm under *Almanza.*

## III.   Did Appellant Suffer Egregious Harm?

█   Appellant did not suffer egregious harm.  The extraneous offense evidence against him was strong, uncontradicted, and unimpeached.  In final argument, defense counsel virtually conceded its truth.

The Court of Criminal appeals has held, in a similar context, that uncontested evidence kept a similar error from causing egregious harm.  In *Kucha v. State,* the trial judge erred by failing to tell the jury the range of punishment if it found the enhancement paragraph untrue.   686 S.W.2d 154, 155 (Tex.Crim.App.1985). The judge told the jury only what the punishment range was if the enhancement were true.  *Id.* The court analyzed the error under *Almanza* and held it was not egregiously harmful because the evidence proving the enhancement was "undisputed, uncontradicted, and seemed to have been taken almost as a 'given' by the parties." *Id.* at 156.  "The fact of the prior convictions was not a contested issue at all."  *Id.* Because the same is true here, we should reach the same conclusion as in *Kucha.*

In this case, *the extraneous offense evidence* was surely harmful, but nothing suggests that *the lack of reasonable doubt instruction* was egregiously harmful.  Given this particular record, we conclude it was not.

The extraneous offense evidence against appellant was strong.   When Yvette Mitchell chased him from her house, used her car to knock him off his bicycle, confronted him, and demanded an explanation for his conduct, appellant was undeterred. He immediately threatened that he would be back.  He came back and shot at Mitch-

---

**3.**  Of course, the defendant, by statute, has the burden of proof on affirmative defenses and defenses, including mistake of fact, which was the sole issue in *Posey.*  Tex. Pen.Code Ann.

§§ 2.03, 2.04, 8.02 (Vernon 1994).  That was the holding in *Posey,* 966 S.W.2d at 60.  Reasonable doubt is neither a defense nor an affirmative defense.

ell 11 times. Mitchell's testimony, like that of all the State's punishment-stage witnesses, was uncontradicted because appellant presented no evidence at the punishment stage. Moreover, Mitchell was not impeached by cross-examination.

Nicole Kennedy was the next victim to testify. Appellant tried to rape her, threatened her with a gun, and his beating left her with two black eyes and a "busted" nose and lip. Appellant did not cross-examine Kennedy. Thus, her testimony was not impeached.

Deputy Cooper, who caught appellant with cocaine in jail, was not impeached. Deputy Berry, who caught appellant with a shank in jail, was not impeached. Deputy Rawls, who testified appellant broke off his shower head and flooded his cell with water, was not impeached. The evidence of appellant's prior convictions was neither contradicted nor impeached.

In final argument, the prosecutor stressed Mitchell's and Kennedy's testimony and called appellant a predator who preyed on women with small children. She was entitled to do so. That evidence was all admissible, and the State's argument was both a summation of it and a reasonable deduction from it. All of it— the evidence and the argument—would have come in the same way even if the jury had been properly instructed on reasonable doubt.

Appellant's jury argument shows that he was not harmed at all, much less egregiously, by the absence of the reasonable doubt instruction. Appellant did not argue that he was not guilty of these extraneous offenses. Rather, appellant's attorney acknowledged that the jury had heard a lot of "bad evidence" and "bad acts" and conceded that "Nobody can mitigate any of that." His sole argument was that appellant was only 20 years old and could change if the jury assessed a sentence of 30 or 40 years, which he requested. That argument was certainly not weakened by

the absence of an instruction on reasonable doubt. This is like *Kucha v. State*, discussed above.

Finally, a proper instruction and definition of reasonable doubt was given at the guilt stage. That charge was read at 11:05 a.m. on April 22, 1998. The jury began deliberations at 11:30 a.m. and found appellant guilty at 11:58 a.m. The punishment stage began the same afternoon. The jury deliberations on punishment began the same day at 3:51 p.m., and the jury announced its verdict at 5:40 p.m. Thus, the jury's deliberations on punishment followed a correct reasonable doubt instruction and definition at the guilt stage by fewer than four hours. Similar time proximity was considered significant in *Cormier v. State*, 955 S.W.2d at 163–64. Accord *Powers v. State*, 985 S.W.2d 596, 601 (Tex.App.—Texarkana 1999, pet. dism'd and pet. ref'd).

Because appellant never contested his guilt of these extraneous offenses, he had nothing to gain from either an instruction on or a definition of reasonable doubt and nothing to lose from their absence.[4] Therefore, we overrule points of error two and three.

### Ineffective Assistance of Counsel

■ In point of error four, appellant contends his attorney was ineffective because he failed to request the reasonable doubt instruction on extraneous offenses at the punishment stage.

This is the only error appellant mentions. Generally, an isolated error will not constitute ineffective assistance of counsel. Moreover, for reasons stated above, it is unlikely that the result of this proceeding would have been any different if the instruction had been given or that its absence interfered with the jury's deliberations.

Both *Martinez* and *Fields* reversed judgments due to similar errors, but both were 2–1 decisions, and both are under

---

4. Which may be why counsel did not object to their absence.

further review by the Court of Criminal Appeals. *See Martinez*, 969 S.W.2d 139 (decided May 7, 1998, with one justice dissenting); *Fields*, 966 S.W.2d 736 (decided March 25, 1998, with one justice dissenting). Moreover, trial counsel was not bound to know of these decisions. *Martinez* was decided after appellant's trial, and *Fields* was decided less than a month before appellant's trial.

This case presents the unusual situation of appellant probably being better off because his attorney did not object. If, as the *Martinez* court held, this error requires automatic reversal, then appellant will ultimately win a new trial in this appeal; thus, his attorney's objection, if it had been made and sustained, would have harmed appellant by taking away this guaranteed reversible error. Given this record, a new trial on punishment would surely be a greater benefit to appellant than the instruction would have been. In any event, we have no record concerning counsel's tactics because there was no hearing on that issue. We will not speculate on it. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994).

We overrule point of error four.

### Sufficiency of the Evidence

In points of error five and six, the appellant asserts the evidence was legally and factually insufficient to prove he placed the victim in fear of imminent serious bodily injury. He contends the evidence showed, at most, only that he was guilty of sexual assault.

The offense of sexual assault is elevated to the offense of aggravated sexual assault if the State proves that, while committing sexual assault, the actor placed the complainant in fear of imminent serious bodily injury. *See* TEX. PEN.CODE ANN. § 22.021(a)(2)(A)(ii) (Vernon Supp.1999). We follow the usual standards of review. *Santellan v. State*, 939 S.W.2d 155, 160 (Tex.Crim.App.1997) (legal sufficiency); *Clewis v. State*, 922 S.W.2d 126, 131 (Tex. Crim.App.1996) (factual sufficiency).

### I. Legally sufficient evidence

On August 13, 1997, the complainant was asleep alone in her parents' home. She awoke and saw appellant standing over her bed. He told her not to look at him, tied her, and sexually assaulted her. When she screamed in pain, appellant struck her, put her in a choke hold, and threatened to kill her. She feared for her life.

We hold the evidence was legally sufficient.

### II. Factually sufficient evidence

Appellant relies on the fact that the complainant did not testify about his choking her until she was recalled to testify on the second day of trial. He also relies on his testimony.

On the first day of trial, the complainant testified as stated above, but she did not mention that appellant choked her and threatened to kill her. On the second day of trial, the State recalled her and asked if she had left anything out of her testimony; she said she had, and she told the jury appellant choked her and threatened to kill her.

Appellant admitted that on August 13, he burglarized the complainant's home and sexually assaulted her. He denied hitting, choking, or threatening her, but admitted telling her not to look at him.

The jury is entitled to judge the credibility of the witnesses and may choose to believe all, some, or none of the testimony of the parties. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986). It is the jury's job to reconcile conflicts in the evidence. *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex.Crim.App.1995). We hold the evidence was factually sufficient.

We overrule points of error five and six.

### Motion for Mistrial

In point of error one, the appellant asserts the judge erred in denying his

motion for mistrial after the State presented extraneous offense evidence, *i.e.,* that, when arrested, he possessed cocaine.

Appellant's sole objection at trial was that the testimony was nonresponsive. No extraneous offense objection was made. Thus, any error was waived. TEX.R.APP. P. 33.1(a)(1)(A); *Cook v. State,* 858 S.W.2d 467, 474 (Tex.Crim.App.1993).

We overrule point of error one.

We affirm the judgment.